IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM E. HENRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 2:17-cv-638-RAH-JTA |
| STEVEN T. MARSHALL, *in his official* | ) | (WO) |
| *capacity as Attorney General of the* | ) | |
| *State of Alabama*, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The question before the court is what a former Alabama grand jury witness may publicly speak about, after having testified before a grand jury, without violating the Alabama Grand Jury Secrecy Act, *see* Ala. Code § 12-16-214, *et seq.* ("the Act"). The Plaintiff here, William Edgar "Ed" Henry, is a former member of the Alabama House of Representatives who testified on January 24, 2014, before a Lee County grand jury that later indicted former Alabama House Speaker Mike Hubbard for violations of the state's ethics laws. Now, Henry wants to speak publicly about the proceedings, including the details of his grand jury testimony, his

1

observations and opinions of the proceeding, those involved in it, and what transpired therein.[1]

Henry filed this suit claiming the secrecy provisions of the Act unconstitutionally deprive him of his First Amendment right to free speech. This case examines whether those secrecy provisions run afoul of the Constitution in preventing Henry from discussing: (1) information he knew prior to testifying before the grand jury ("prior knowledge") and (2) what transpired in the grand jury room, including testimony Henry gave and did not give, his personal observations of the proceeding, and his opinions regarding perceived prosecutorial misconduct ("grand jury proceeding").

As explained herein, the court finds that the Act, by virtue of its overbreadth, does impermissibly violate Henry's First Amendment right to speak to facts and matters known to him before he testified before the grand jury—a result compelled by the United States Supreme Court's decision in *Butterworth v. Smith,* 494 U.S. 624 (1990).  However, the court also concludes that the Act does not otherwise violate Henry's First Amendment rights by prohibiting Henry from publicly discussing what transpired in the grand jury room, including his testimony before

---

[1] In 1999, Brad Pitt, Edward Norton, and Helena Bonham Carter starred in the movie *Fight Club*. One of the central themes throughout the film was the rule that participants in "Fight Club" could "not talk about Fight Club."  In a sense, Henry wishes to do just that–talk about his participation in a secret proceeding; here, the grand jury.

the grand jury, the questions asked of him, the questions not asked of him, the actions and discussions of the prosecutor, and his personal opinions and observations of the proceeding and those involved.

## I.  BACKGROUND

### A. Mike Hubbard and Ed Henry

Much ink has been spilled in the press and in judicial opinions concerning the prosecution of Mike Hubbard, the former Speaker of the Alabama House of Representatives. *See generally Ex parte Hubbard*, No. 1180047, 2020 WL 1814587 (Ala. Apr. 10, 2020).  In October of 2014, a Lee County grand jury indicted Hubbard on twenty-three counts of violating the Alabama Ethics Act, Ala. Code § 36-25-1, *et seq.*, and after a four-week trial, a Lee County jury convicted Hubbard on twelve of those counts. 2020 WL 1814587, at *2.  On appeal, the conviction was affirmed on six of the twelve counts. *Id.* at *21.

Pertinent to Hubbard's ethics issues as they involved Henry, Hubbard owned an interest in Craftmasters, Inc. ("Craftmasters"), a printing business located in Auburn, Alabama; Hubbard's hometown.  Of his many alleged transgressions, Hubbard was accused of using his political power to *gently suggest* that state house

representatives use Craftmasters to print their campaign materials.  This, of course, was violative of the Ethics Act, so the theory went.[2]

Ed Henry represented Morgan County, Alabama in the state house during the time period at issue in this case.  Henry was elected in 2010, despite Hubbard's apparent opposition to his candidacy.

Henry entered the ethics mix involving Hubbard because, following his 2010 victory, Henry's campaign consultant recommended that Henry use Craftmasters for his future printing needs.  Following this recommendation, Henry retained Craftmasters, although Henry vehemently contested that this was a quid-pro-quo or that improper pressure was used.

**B. The Lee County Grand Jury**

A few years later, the Alabama Attorney General's Office began investigating Hubbard for potential ethics code violations, including issues involving Craftmasters.  A special grand jury in Lee County was empaneled on August 19, 2013, and a twenty-three-count indictment returned against Hubbard on October 17, 2014. *Hubbard v. State*, Appeal No. CR-16-0012, 2018 WL 4079590, at *4 (Ala.

---

[2] Hubbard ultimately was found not guilty of a crime for these actions, but instead, was convicted for, *inter alia*, obtaining the assistance of a former Business Council of Alabama lobbyist in acquiring investments in Craftmasters (which was experiencing financial difficulties), also an apparent criminal violation of the Ethics Act.

Crim. App. Aug. 27, 2018).  Leading the grand jury endeavor was Matt Hart, a prosecutor with the Attorney General's office.

**C. The Leaks**

Like any scandal involving elected officials, intrigue and innuendo abounded, and those with the inside-know were in short supply due to the confidential nature associated with an on-going grand jury proceeding.  One person claiming inside knowledge of the grand jury proceeding was an Alabama state representative, who would occasionally call Henry to discuss the happenings inside the grand jury room.

Believing that this representative—and others—were receiving information via improper leaks from Matt Hart as a means of undermining Mike Hubbard, Henry spoke with Mike Hubbard's criminal defense attorney about the leaks.  Hubbard's counsel then notified the U.S. Attorney's Office and told Matt Hart about it as well.

Following Henry's conversations with Hubbard's attorney, Henry was subpoenaed to appear before the grand jury.

**D. Henry's Grand Jury Testimony**

Henry appeared before the grand jury on January 24, 2014.  At the outset of Henry's testimony, Hart warned Henry about the need to tell the truth and emphasized the secrecy of the proceeding itself and of Henry's testimony.  Aside from testifying to subject matters related to Hubbard's ultimate indictment, near the end of Henry's testimony, Hart gave Henry warnings about the Alabama Grand Jury

Secrecy Act, again reinforcing the secrecy of the proceedings and of Henry's testimony. Hart also warned Henry of the criminal penalties associated with violations of the Act.

Henry claims that the tone of Hart's warnings was very imposing and ominous.   Henry also alleges that Hart acted in an intimidating manner.

### E. Events After Henry's Grand Jury Testimony

After his testimony before the grand jury, Henry learned of a recording, released on www.al.com, of a conversation between Hart and radio host and local attorney, Baron Coleman, that occurred on January 23, 2014.  In that conversation, Hart apparently told Coleman that "we are on utterly solid ground shutting people up" by bringing witnesses before the grand jury, due to the Act's "very broad prohibition" on disclosure of information from inside the grand jury room.

Based on Hart's warnings in the grand jury room and Hart's statements in the recording, Henry believes that he was subpoenaed by Hart for the sole and improper purpose of preventing Henry from disclosing his knowledge about the grand jury leaks and discussing in a public forum what Henry believes were Hart's lies to the grand jury.[3]

---

[3] After the indictment, Hubbard and his defense attorneys raised Hart's alleged prosecutorial misconduct in a motion to dismiss the indictment filed in Hubbard's criminal case in Lee County. Ultimately, the presiding circuit court judge concluded there was insufficient evidence of misconduct to dismiss the charges. (*See* Doc. 109-5.)

On September 25, 2017, Henry filed this lawsuit[4] claiming he wants to, but cannot due to the Act and the threats from Hart, discuss in an open, public forum his knowledge about grand jury leaks, his communications and dealings with Mike Hubbard, Matt Hart, and others, his appearance and testimony before the grand jury, and his observations and opinions concerning perceived prosecutorial misconduct by Hart in the grand jury room.[5] (*See* Doc. 1.)

Henry brings both facial and as-applied challenges under the First Amendment to the following provisions in the Act:

1) Ala. Code § 12-16-215, providing in relevant part as follows: "No . . . past or present grand jury witness . . . shall willfully at any time directly or indirectly, conditionally or unconditionally, by any means whatever, reveal, disclose or divulge or cause to be revealed, disclosed or divulged, any knowledge or information pertaining to any grand juror's questions, considerations, debates, deliberations, opinions or votes on any case, evidence, or other matter taken within or occurring before any grand jury of this state."

2) Ala. Code § 12-16-216, providing in relevant part as follows: "No past or present … grand jury witness . . . shall willfully at any time, directly or indirectly, conditionally or unconditionally, by any means whatever, reveal, disclose or divulge or endeavor to reveal, disclose or divulge or cause to be revealed, disclosed or divulged, *any knowledge of the form*, *nature or content of any physical evidence* presented to any grand jury

---

[4] This matter was reassigned to the undersigned on December 17, 2019.  Since that time, Hubbard's criminal case reached a final conclusion with a decision from the Alabama Supreme Court on April 10, 2020, *see Ex parte Hubbard*, No. 1180047, 2020 WL 1814587 (Ala. Apr. 10, 2020). Hubbard's Petition for a Writ of Certiorari, filed with the United States Supreme Court, was denied on February 22, 2021, *see Michael Gregory Hubbard v. Alabama*, Supreme Court Case No. 20-986.

[5] At the court's request, the parties have filed a stipulation regarding the various topics and subjects on which Henry wishes to speak.  In reviewing these items, the court groups them into the aforementioned topics: prior knowledge and grand jury proceeding.

of this state or *any knowledge of the form, nature or content of any question propounded to any person within or before any grand jury* or *any comment made by any person* in response thereto or *any other evidence, testimony or conversation occurring or taken therein*." (emphasis added).

Henry seeks from this court a declaration that the aforementioned provisions of the Act violate the First Amendment and an injunction against the enforcement of these provisions against him. Henry further requests that the court order the release of the transcript and audio recording of Henry's grand jury testimony and enjoin the Defendant from providing "inaccurate and misleading warnings to grand jury witnesses that they can never reveal their grand jury testimony." (Doc. 1, p. 20.)

The Defendant's summary judgment briefs note that Counts III and IV target the enforcement mechanisms of § 12-16-215 and § 12-16-216, rather than assert actual separate claims. (*See* Doc. 108, p. 19.)  Henry does not dispute that point, and the court will thus limit its analysis to those two operative sections of the Act.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a), (c).  No genuine issue of material fact exists if the opposing party fails to make a sufficient showing on an essential

element of his case as to which he would have the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Just as important, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).  In making this assessment, the court must "view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc*., 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted), and "resolve all reasonable doubts about the facts in favor of the non-movant," *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am*., 894 F.2d 1555, 1558 (11th Cir. 1990) (citation omitted).

The applicable Rule 56 standard is not affected by the filing of cross-motions for summary judgment. *See, e.g., Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).  "Cross-motions . . . will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed . . . ." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (citation omitted).  When both parties move for summary judgment, the court must evaluate each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *Am. Bankers Ins. Group*, 408 F.3d at 1331.

III.   **ANALYSIS**

**A. Differentiating Between Facial and As-Applied Challenges**

Although he does little to clearly argue it, Henry apparently brings[6] facial and as-applied challenges to the Act, particularly Ala. Code § 12-16-216, and to a much lesser extent, § 12-16-215.

"A facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a statute or regulation itself." *Horton v. City of St. Augustine, Fla*., 272 F.3d 1318, 1329 (11th Cir. 2001). "Generally, for a facial challenge to succeed, 'the challenger must establish that no set of circumstances exists under which the Act would be valid.'" *Indigo Room, Inc. v. City of Fort Myers*, 710 F.3d 1294, 1302 (11th Cir. 2013) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Under the Supreme Court's holding in *Salerno*, generally, a law is not facially unconstitutional unless it "is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (citing *Salerno*, 481 U.S. at 745). In a facial challenge, the claimed constitutional violation derives from the terms of the statute, not its application.  *See* Rosenkranz, *The Subjects of the Constitution*, 62 Stan. L. Rev. at 1229–38.  The court's remedy should therefore be directed at the

---

[6] Even if he characterized his claims as both facial and as-applied challenges, the court is not bound by Henry's designations and looks to the Complaint to determine what claims, if any, his allegations support.  *See Harrell v. The Fla. Bar*, 608 F.3d 1241, 1259 (11th Cir. 2010) (citing *Jacobs v. The Florida Bar*, 50 F.3d 901, 905 n.17 (11th Cir. 1995)).

statute itself and injunctive and declaratory in nature, for a successful facial challenge results in the statute being invalidated. *See Ezell v. City of Chicago*, 651 F.3d 684, 698 (7th Cir. 2011).

However, while a plaintiff mounting a facial attack must usually prove "that no set of circumstances exists under which the [statute] would be valid," *Salerno*, 481 U.S. at 745, "(o)verbreadth is an exception to that rule." *Doe v. Valencia Coll*., 903 F.3d 1220, 1232 (11th Cir. 2018) (citing *Salerno*, 481 U.S. at 745). It is an exception because of the concern that "the very existence of some statutes may cause persons not before the Court to refrain from engaging in constitutionally protected speech." *Young v. Am. Mini Theatres, Inc*., 427 U.S. 50, 60 (1976); *see also Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).

In a facial overbreadth challenge, the plaintiff must show that the statute punishes a substantial amount of First Amendment-protected free speech, "judged in relation to the statute's plainly legitimate sweep." *Fla. Ass'n of Prof'l Lobbyists, Inc. v. Fla. Office of Legislative Servs*., 525 F.3d 1073, 1079 (11th Cir. 2008). "Substantial overbreadth" is not a precisely defined term, but it requires "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984).

"The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *United States v. Stevens*, 559 U.S. 460, 474 (2010) (citing *United States v. Williams*, 553 U.S. 285, 293 (2008)).  Given the threat to freedom of expression, traditional rules of standing are altered to permit litigants "to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick*, 413 U.S. at 612.  Thus, a statute found to be overbroad is "totally forbidden until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." *Id*. at 613.  The Supreme Court has recognized the overbreadth doctrine as "strong medicine" that should be "employed . . . sparingly and only as a last resort." *Id*.  Thus, "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id*. at 615.

While it is well-established that, in the area of free speech, an overbroad law may be subject to facial review and invalidation, even though its application in the case under consideration may be constitutionally unobjectionable, *see Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 129 (1992); *Taxpayers for Vincent*, 466 U.S. at 799, because Henry seeks to vindicate his own rights, his

challenge may actually be an as-applied challenge. *See Harrell*, 608 F.3d at 1259 (noting the Supreme Court's characterization of a challenge as being "as-applied" when the plaintiff "alleged that but for the prohibition, he would engage in the prohibited behavior") (citing *Jacobs*, 50 F.3d at 906). But as discussed herein, an analysis of Henry's as-applied claim is unnecessary in light of the statute's facial overbreadth.

### B. Henry's Facial Challenge to the Act's Restrictions on Disclosure of "Prior Knowledge"

Henry argues that language in the Act, particularly Ala. Code § 12-16-216, is facially overbroad, relying primarily on a United States Supreme Court decision that partially invalidated Florida's grand jury secrecy statute on First Amendment overbreadth grounds. (Doc. 119, pp. 4-5.) Specifically, in *Butterworth v. Smith,* the Supreme Court affirmed an Eleventh Circuit decision holding that "the provisions of [the statute] prohibiting 'any other person' from disclosing the nature of grand jury testimony are unconstitutional to the extent that they apply to witnesses *who speak about their own testimony* after the grand jury investigation is terminated." *Butterworth*, 494 U.S. at 628-29 (citing 866 F.2d 1318, 1319, 1321 (11th Cir. 1989) (emphasis added)). *See also Butterworth*, 866 F.2d at 1319 ("Appellant argues that [the statute] is *unconstitutionally overbroad*, in that it prohibits any person appearing before the grand jury from ever disclosing matters testified to, even long after the investigation is terminated.") (emphasis added).

1.  The *Butterworth* Decision

In *Butterworth*, the Supreme Court balanced a Florida grand jury witness's asserted First Amendment rights against Florida's interests in preserving the confidential nature of its grand jury proceedings. 494 U.S. at 630–31. There, a reporter wanted to publish a story detailing information he had learned about a public corruption matter, but was prohibited from doing so because he had testified about the same corruption matter before a state grand jury. The Supreme Court held that Florida's interest in continued secrecy under the statute in question, which provided that no one could "publish, broadcast, disclose, divulge, or communicate to any other person, or knowingly to cause or permit to be published, broadcast, disclosed, divulged, or communicated to any other person, in any manner whatsoever, *any testimony of a witness* examined before the grand jury, *or the content, gist, or import thereof*," had to be weighed against the reporter's First Amendment rights to make a truthful public statement about the investigation. *Butterworth*, 494 U.S. at 635–36 (discussing Fla. Stat. § 905.27 (1989)). The Court found that the restrictive effect of the Florida statute was "dramatic," stating:

> Before he is called to testify in front of the grand jury, [the reporter] is possessed of information on matters of admitted public concern about which he was free to speak at will. After giving his testimony, respondent believes he is no longer free to communicate this information since it relates to the 'content, gist, or import' of his testimony. The ban extends not merely to the life of the grand jury but into the indefinite future. The potential for abuse of the Florida prohibition, through its employment as a device to silence those who

know of unlawful conduct or irregularities on the part of public officials, is apparent.

494 U.S. at 635–36.

In effect, the Supreme Court concluded that the language of the Florida statute captured the knowledge and information held by the witness before he entered into and testified during the grand jury proceeding because it fell within the language prohibiting a witness from "disclos[ing], divulg[ing], or communicat[ing] . . . in any manner whatsoever" "*the content, gist, or import thereof*" of "*any testimony of a witness* examined before the grand jury." Thus, for example, if a witness testified before the grand jury about a particular matter of which he had lawful knowledge before giving his testimony, the statute, by its language, prohibited the witness from later discussing that same matter because it was the subject of his testimony.

According to Henry, Ala. Code §§ 12-16-215 and 12-16-216, like the Florida grand jury secrecy statute that was partially invalidated in *Butterworth*, have a similarly "dramatic" impact on an individual's ability to speak on matters of public concern about which the witness knew prior to testifying before a grand jury. While the sections differ somewhat from the Florida statute that was analyzed in *Butterworth*, Henry argues that the Alabama provisions also contain broad language, which clearly impacts the free speech rights of witnesses in Alabama grand jury matters.

15

The Alabama Attorney General, on the other hand, argues that the Act's language, unlike Florida's language, does not pose any unconstitutional infringement on a grand jury witness's right to speak publicly about matters that the grand jury witness knew *before* setting foot inside the grand jury room because these two statutes, by their language, do not capture prior knowledge. (Doc. 108, pp. 20-22.)  Therefore, argues the Attorney General, the Act survives First Amendment scrutiny under *Butterworth*.

### 2.  Ala. Code § 12-16-215

The court begins with the text of Ala. Code § 12-16-215.  There, a grand jury witness, such as Henry, is precluded from "reveal[ing], disclos[ing] or divulg[ing]" "at any time" "directly or indirectly" "by any means whatsoever" "any knowledge or information pertaining to any *grand juror's* . . . considerations, . . . evidence, or any other matter taken within or occurring before any grand jury of this state." Henry argues that this language captures and therefore includes prior knowledge. The Attorney General says it does not.  But what the parties do seem to agree upon, is that if the language does include prior knowledge, then the Eleventh Circuit's and Supreme Court's decisions in *Butterworth* hold that the language unconstitutionally infringes upon Henry's First Amendment rights.

Here, reviewing the language of Ala. Code § 12-16-215 even in the broadest sense, the court strains to find any construction that would capture a witness's prior

16

knowledge.  Perhaps such would be captured under the language prohibiting a witness from disclosing the evidence presented to a grand juror for consideration, which in Henry's case, would be the facts and information that Henry testified to before the grand jury.  But it appears that, at its core, § 12-16-215 is directed toward the disclosure of the grand jury's actions, such as its votes, deliberations, debates and discussions, issues that Henry does not seek permission to openly discuss.

Because only through an extremely strained and unorthodox reading of § 12-16-215 can it arguably be interpreted as capturing a witness's prior knowledge, the court concludes that § 12-16-215 does not run afoul of *Butterworth*.  The fact that Henry gives little mention to it in his summary judgment brief suggests that Henry does not challenge this interpretation either.

3.  Ala. Code § 12-16-216

 But aside from § 12-16-215, Henry also raises a challenge to § 12-16-216. That section precludes a grand jury witness, such as Henry, from "reveal[ing], disclos[ing] or divulg[ing]" "at any time" "directly or indirectly" "by any means whatsoever" "any knowledge of the form of, nature or content of any physical evidence presented" or "any question propounded" or "any comment made by any person in response thereto or any other evidence, testimony or conversation occurring or taken therein." The Act does not provide definitions for the terms

contained in § 12-16-216.  Instead, the public is left to use its best guess as to the speech that is captured by § 12-16-216's language.

On its face, this section appears broader in application than § 12-16-215 and appears to capture prior knowledge because such would constitute knowledge of the "*nature or content*" of physical evidence presented, questions propounded and responses thereto, and other testimony taken during the grand jury proceeding.  In that context, the language at issue is not too different from the language of Florida Statute § 905.27 (1989) at issue in *Butterworth*, which provided it was "unlawful for any person knowingly to publish, broadcast, disclose, divulge, or communicate to any other person . . . any testimony of a witness examined before the grand jury, or the *content, gist, or import thereof.*" Fla. Stat. § 905.27 (1989) (emphasis added). The Supreme Court explained the issue thusly:

> (B)efore he is called to testify in front of the grand jury, respondent is possessed of information on matters of admitted public concern about which he was free to speak at will. After giving his testimony, respondent believes he is no longer free to communicate this information since it relates to the *"content, gist, or import" of his testimony.* The ban extends . . . into the indefinite future. The potential for abuse of the Florida prohibition . . . as a device to silence those who know of unlawful conduct or irregularities on the part of public officials, is apparent. We agree with the Court of Appeals that the interests advanced by the portion of the Florida statute struck down are not sufficient to overcome respondent's First Amendment right to make a truthful statement of information he acquired on his own.

494 U.S. at 635–36 (emphasis added).

Here, though the Lee County grand jury has long since terminated its proceedings against Speaker Mike Hubbard, and though Henry wishes to discuss his own conversations that occurred before Henry set foot in the grand jury room, § 12-16-216's text, plainly read, arguably would sanction a prosecution of Henry for doing so. Like the Florida statute at issue in *Butterworth*, the Act's language can be read to prohibit a witness's ability to communicate about "information on matters of admitted public concern about which he was free to speak at will" prior to the witness testifying about that information in the grand jury room because those matters relate to the "nature or content" of responses to questions propounded and the "nature or content" of other evidence, testimony, and conversations occurring within the grand jury proceeding. *Butterworth*, 494 U.S. at 635. As a result of this overly broad language, the Act captures a witness's prior knowledge and thus impermissibly restricts that witness's First Amendment rights pursuant to *Butterworth*. *Id.*

The Attorney General maintains both directly and through its expert witness that no grand jury witness has ever been prosecuted for divulging this "prior knowledge," and so there is simply no First Amendment infringement here. (*E.g.*, Doc. 108, p. 7.)[7] This does not, however, mean a prosecutor will not do so in the

---

[7] Equally unpersuasive is the Attorney General's contention that because prosecutors have interpreted the Act in a way that has not precluded grand jury witnesses from speaking about their prior knowledge, the Act is "readily" subject to competing interpretations, thus necessitating the application of the doctrine of constitutional avoidance. (Doc. 108, p. 22.) While the practice in the Eleventh Circuit is to "uphold a state statute against a facial challenge if the statute is readily susceptible to a narrowing construction that avoids constitutional infirmities," the Circuit also

future.[8] The willingness of the executive branch to follow the law in a manner that is constitutional does not affect whether a statute is facially invalid; if the text is repugnant to the Constitution, that is the end of the matter. *See, e.g., Clean Up '84 v. Heinrich*, 759 F.2d 1511, 1514 (11th Cir. 1985) ("The danger in an overbroad statute is not that actual enforcement will occur or is likely to occur, but that third parties . . . may feel inhibited in utilizing their protected first amendment communications because of the existence of the overly broad statute.") (citing *Taxpayers for Vincent*, 466 U.S. at 801). "It is no answer, therefore, to this facial challenge that the statute has not been enforced" against third parties who could conceivably be affected by the statute's overbreadth. *E.g., Clean Up '84*, 759 F.2d at 1514. A government's past practice of non-enforcement does not negate a statute's First Amendment chilling effect. *See Parker v. Judicial Inquiry Comm'n of*

---

cautions against "rewrit[ing] the clear terms of a statute in order to reject a facial challenge," particularly when a federal court is reviewing a state statute. *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1256, n.6 (11th Cir. 2005) (citing *Fla. Right to Life, Inc. v. Lamar*, 273 F.3d 1318, 1326 (11th Cir. 2001) (citing in turn *Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1572 (11th Cir. 1993) (internal marks omitted)).  Importantly, there is no Alabama Supreme Court decision that limits the Act, and a narrowed reading would require this court to rewrite the basic terms of the statute by inserting limiting language.  The court is reluctant to do so.  Instead, the task of drafting a constitutionally permissible grand jury secrecy statute should be left to the state legislature. *See Dimmitt v. City of Clearwater*, 985 F.2d 1565 (11th Cir. 1993).  In any event, even if the Act could be construed in a constitutional manner, overbreadth is an exception to the rule that a plaintiff mounting a facial attack must prove that no set of circumstances exists under which the challenged statute would be valid. *Valencia Coll.*, 903 F.3d at 1232.

[8] In having found that § 12-16-216 is, in part, facially unconstitutional, and in light of the Attorney General's insistence that he has not and will not prosecute a grand jury witness for disclosing prior knowledge, the court pretermits discussion under an as-applied theory.

*Alabama*, Case No. 2:16-CV-442-WKW, 2017 WL 3820958, at *5 (M.D. Ala. Aug. 31, 2017) (Watkins, J.) ("What matters is whether the Attorney General 'has the power' to enforce the challenged provision against the plaintiff.") (citing *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1246 (11th Cir. 1998)).

Here, we have a clear example of such a chilling effect. Counsel for the Attorney General admitted at oral argument that a witness who has appeared before a grand jury would have no way of guaranteeing his freedom from prosecution if he wanted to talk about his own testimony, short of consulting with an attorney about what is precisely permissible to discuss and what is not. That admission itself demonstrates the law's overbreadth under the First Amendment: "[m]any persons, rather than undertake the considerable burden (and sometimes risk) of vindicating their rights through case-by-case litigation, will choose simply to abstain from protected speech . . . harming not only themselves but society as a whole, which is deprived of an uninhibited marketplace of ideas. Overbreadth adjudication, by suspending all enforcement of an overinclusive law, reduces these social costs caused by the withholding of protected speech." *Virginia v. Hicks*, 539 U.S. 113, 119.[9]

---

[9] The court is mindful, especially given our country's current national environment, of the general necessity for grand jury proceedings to be kept out of the public view. *See Anonymous Grand Juror #1 v. Commonwealth of Kentucky*, Case No. 20-CI-5721 (KY. Circ. Ct. 2020); *see also Doe v. Bell*, 969 F.3d 883 (8th Cir. 2020); *Doe v. McCulloch*, 542 S.W.3d 354 (Mo. Ct. App. 2017). Again, the court only finds § 12-16-216 invalid insofar as that provision can be read to prohibit disclosure of a witness's prior knowledge after the grand jury has completely finished its work,

4. Remedy

What the court can practically do to remedy the problematic language in Ala. Code § 12-16-216 is a tricky question. *See, e.g.,* Fallon, 113 Harv. L. Rev. 1321, 1339 (2000) ("A court has no power to remove a law from the statute books. When a court rules that a statute is invalid--whether as applied, in part, or on its face--the legal force of its decision resides in doctrines of claim and issue preclusion and of precedent."). The court notes that although it is upholding a facial challenge against one section in the Act, the entire Act is not rendered invalid thereby under the venerable rule that statutes are to be rendered invalid partially, leaving in place the rest of the law. *See Brockett v. Spokane Arcades, Inc*., 472 U.S. 491, 504 (1985) ("the normal rule that partial, rather than facial, invalidation is the required course.").

There is no severability provision specifically contained within the Act. "In determining whether to sever a constitutionally flawed provision, courts should consider whether the balance of the legislation is incapable of functioning independently," *United States v. Romero–Fernandez*, 983 F.2d 195, 196 (11th Cir. 1993), and whether partial invalidation of the statute "would be contrary to legislative intent in the sense that the legislature would not have passed the statute

---

nothing more. *See generally Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218 (1979) ("We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.").

without the invalid portion," *Smith v. Butterworth*, 866 F.2d at 1321. The court's inquiry "does not, however, begin and end there. That is so, because courts will strive to uphold acts of the legislature." *State ex rel. Pryor ex rel. Jeffers v. Martin*, 735 So. 2d 1156, 1158 (Ala. 1999) (citing *City of Birmingham v. Smith*, 507 So. 2d 1312, 1315 (Ala. 1987) (quotations omitted)).

Under applicable Alabama law, "if a portion of a legislative enactment is determined to be unconstitutional but the remainder is found to be enforceable without it, a court may strike the offending portion and leave the remainder intact and in force." *Martin*, 735 So. 2d at 1158. "Nevertheless, the authority of a court to eliminate invalid elements of an act and yet sustain the valid elements is not derived from the legislature, but rather flows from powers inherent in the judiciary." *Id.* (citing 2 Norman J. Singer, *Sutherland Statutory Construction*, § 44.08 (5th ed. 1992) (quotations omitted)).

Alabama Code § 12-16-216 is severable from the rest of Act, as shown by the similar severability analysis undertaken by the Eleventh Circuit in *Butterworth*. There, as here, "(t)he remainder of the statute accomplishes the legislature's general intent of enhancing the integrity of the grand jury system by providing for the confidentiality of the proceedings." 866 F.2d at 1321.

To be clear, the court is not striking Ala. Code § 12-16-216 in its entirety, nor is it striking any of the specific language contained therein. Rather, this court's

finding is that, pursuant to *Butterworth* and the governing First Amendment overbreadth doctrine, Ala. Code § 12-16-216 is unconstitutional only in its application to Henry's disclosure of information he possessed prior to his testimony before the grand jury. Accordingly, summary judgment as to Henry's facial challenge to the Act is due to be GRANTED, in part, as to Henry, and DENIED, in part, as to the Attorney General.

In his Complaint, Henry also asks this court to issue a permanent injunction to prevent the Attorney General from enforcing the Act against him. Under traditional equitable principles, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. *See Angel Flight of Ga., Inc. v. Angel Flight Am., Inc*., 522 F.3d 1200, 1208 (11th Cir. 2008). Neither Henry nor the Attorney General, however, address these factors or the request for an injunction in their respective summary judgment motions. Having declared the Act unconstitutional as it applies to Henry's prior knowledge, and given the parties' lack of briefing on the issue, the court declines to issue an injunction here. Instead, the court expects that the parties will act in accordance with the court's order.

### C. Henry's Ability to Speak About the Grand Jury Proceeding

While *Butterworth* leads the way as it concerns any restriction by the State of Alabama on a grand jury witness's efforts to discuss and divulge prior knowledge, *Butterworth* does not definitively answer the question as it concerns Henry's desire

24

to discuss what happened in the grand jury room, whether that be which questions he was asked, which questions he was not asked, Hart's demeanor and actions, and any belief by Henry of prosecutorial misconduct occurring inside the grand jury room. Indeed, in *Butterworth*, the Supreme Court purposely did not address the right of a witness to discuss his "experience" before the grand jury. 494 U.S. at 629 n.2. The Supreme Court instead limited its holding to allow the witness to "divulge information of which he was in possession before he testified before the grand jury, and not information which he may have obtained as a result of his participation in the proceedings of the grand jury." *Id*. at 631-32.

The *Butterworth* Court stated that its holding was limited to a grand jury witness's testimony, as that was how the question was limited by the Eleventh Circuit, to which the plaintiff did not object. 494 U.S. at 629, n.2 ("In his complaint, respondent also sought a declaration that he was entitled to divulge his 'experience' before the grand jury. Whatever this term might encompass, it is clear that the Court of Appeals limited its holding to a witness' 'testimony' before the grand jury. Since respondent has not sought review of any portion of this ruling, we similarly limit our holding to the issue of a witness' grand jury testimony."); *see* 866 F.2d at 1320–21 ("We thus conclude that [the statute] is unconstitutional insofar as it applies to witnesses who speak about the nature of their own grand jury testimony after the investigation has been completed.").

25

As Justice Scalia noted in his *Butterworth* concurrence, it was "[q]uite a different question presented, however, by a witness' disclosure of the grand jury proceedings, which is knowledge he acquires 'not on his own' but only by virtue of being made a witness." 494 U.S. at 637.

Thus, Henry's case varies from *Butterworth* in a critical way. He not only wants to divulge information that he possessed prior to his grand jury testimony, but he also wants to publicly disclose information he learned as a direct result of his participation in the Lee County grand jury proceeding. The question then is whether the First Amendment requires the State of Alabama to allow Henry to disclose both the former and the latter.

To this point, the court has only dealt with Henry's right to disclose information that he knew prior to entering the grand jury room. The next question this court must answer is whether Henry may speak to the things he heard, saw, and experienced within that deliberative chamber. This issue implicates the full range of justifications for the secrecy of grand jury deliberations. *See Douglas Oil*, 441 U.S. at 218; *Butterworth*, 494 U.S. at 629. The question is complicated by the fact that the grand jury investigation at issue is in the distant past, and the criminal proceeding against Hubbard only recently concluded. As the matters Henry wishes to discuss comprise speech that attempts to hold a public official to account, this

speech lies at the very core of First Amendment protection. *See Butterworth*, 494 U.S. at 632.

Instructive here is another recent high-profile case, *Doe v. Bell*. There, the Eighth Circuit upheld the State of Missouri's grand jury secrecy law as to a grand juror who sought to talk about matters of public interest that she witnessed during the grand jury proceeding that investigated the police shooting of Michael Brown in Ferguson, Missouri. *See Doe v. Bell*, 969 F.3d 883, 894 (8th Cir. 2020) (upholding Mo. Ann. Stat. § 540.320).[10] This grand juror argued that she should have been able to discuss in public what transpired during the grand jury proceeding in the interests of justice and transparency. The juror believed the prosecutor released misleading information to the public following the conclusion of the grand jury's work in that case, where ultimately, the officer who shot Michael Brown was not indicted. *See* 969 F.3d at 886.

The *Bell* court analyzed First Amendment concerns in determining whether the Missouri statute was narrowly tailored to achieve a compelling governmental interest as applied to the speech in which the plaintiff averred she wanted to engage, and found that the statute was narrowly tailored. *Id.* at 889. The court held that,

---

[10] The statute at issue in *Bell* reads in full: "No grand juror shall disclose any evidence given before the grand jury, nor the name of any witness who appeared before them, except when lawfully required to testify as a witness in relation thereto; nor shall he disclose the fact of any indictment having been found against any person for a felony, not in actual confinement, until the defendant shall have been arrested thereon. Any juror violating the provisions of this section shall be deemed guilty of a class A misdemeanor." Mo. Ann. Stat. § 540.320.

among other things, the Missouri statute protected the identity of witnesses and the information they presented to the grand jury, protected the secrecy of the grand jury's deliberative process, and protected the unindicted accused from public ridicule or opprobrium. The court also held that the statute did not sweep too broadly, did not permit vast swaths of speech that would undermine the state's otherwise compelling interest such that the statute cannot be accurately said to advance its stated purposes, and that there was no more limited means by which the state could advance its interest in preserving its functioning grand jury system. *Id*. at 892-894.

Here, unlike in *Bell*, this court is faced with a state grand jury witness, not a grand juror, who wishes to recount his own personal experience within the grand jury proceedings. The court notes that the basic presumption in federal criminal cases is that grand jury witnesses are not bound by secrecy with respect to the content of their testimony. *See, e.g., In re Grand Jury*, 490 F.3d 978, 985 (D.C. Cir. 2007) ("The witnesses themselves are not under an obligation of secrecy."); *see also id*. at 989 ("A grand jury witness is legally free to tell, for example, his or her attorney, family, friends, associates, reporters, or bloggers what happened in the grand jury. For that matter, the witness can stand on the courthouse steps and tell the public everything the witness was asked and answered.") (citing Fed. R. Crim. P. 6(e)(2)(A)-(B); Fed. R. Crim. P. 6, Advisory Committee Notes, 1944 Adoption, Note to Subdivision (e)). But that exception in the federal context does not render the

state's interest in its own grand jury proceedings any less compelling, as courts have upheld state law restrictions on grand jury witnesses' disclosure of information learned only by participating in grand jury proceedings where the restrictions were limited in duration, *see Butterworth*, 494 U.S. at 632, or allowed for broad judicial review, *see Hoffmann-Pugh v. Keenan*, 338 F.3d 1136, 1140 (10th Cir. 2003) (agreeing state court grand jury witness could be precluded from disclosing information learned through giving testimony, but noting state law provided a mechanism for judicial determination of whether secrecy was still required).

As in *Bell*, the Alabama statute is a content-based restriction of speech, and so the court must evaluate whether the Alabama statute is narrowly tailored to the state's compelling interest in maintaining grand jury secrecy against Henry's desire to publicly recount his experience before the Lee County grand jury. *See, e.g., Otto v. City of Boca Raton*, *Fla*., 981 F.3d 854, 861 (11th Cir. 2020) ("because the ordinances depend on what is said, they are content-based restrictions that must receive strict scrutiny.").

1.  Compelling Interest

That Alabama's interest in grand jury secrecy is compelling needs little repetition, for as the Supreme Court has recounted, that interest is a venerable part of our common law heritage from England. *Douglas Oil*, 441 U.S. at 219 n.9 ("Since the 17th century, grand jury proceedings have been closed to the public, and records

of such proceedings have been kept from the public eye. The rule of grand jury secrecy was imported into our federal common law and is an integral part of our criminal justice system.") (citation omitted). Grand jury secrecy "serves several interests common to most such proceedings, including enhancing the willingness of witnesses to come forward, promoting truthful testimony, lessening the risk of flight or attempts to influence grand jurors by those about to be indicted, and avoiding public ridicule of those whom the grand jury declines to indict." *John Doe, Inc. v. Mukasey*, 549 F.3d 861, 876 (2d Cir. 2008), *as modified* (Mar. 26, 2009) (citing *Douglas Oil*, 441 U.S. at 218–19).

However, "the invocation of grand jury interests is not some talisman that dissolves all constitutional protections;" instead, "grand juries are expected to "operate within the limits of the First Amendment, as well as the other provisions of the Constitution." *Butterworth*, 494 U.S. at 630 (citations and quotations omitted). The court therefore turns next to the justifications proffered by the State of Alabama. *Id.* ("We must thus balance respondent's asserted First Amendment rights against Florida's interests in preserving the confidentiality of its grand jury proceedings.").

Alabama Code § 12-16-214 lists four interests protected by the state's grand jury secrecy statutes, including that grand jurors have the utmost freedom in their deliberations without fear of outside influence, that witnesses may testify freely without fear of retaliation, preventing the accused from fleeing prosecution, and

protecting the reputations of those falsely accused. *See* Ala. Code § 12-16-214. The Attorney General also offers the testimony of Ellen Brooks, an expert with more than forty years of experience as a prosecutor for the State of Alabama.  (*See* Doc. 109-2.)  Brooks articulates five primary reasons for the continued maintenance of the veil of secrecy over all that happens in the grand jury room.  First, Brooks believes that criminal suspects and the media will put pressure on grand jurors. Second, witnesses might face external pressure and be told not to answer questions. Third, when a suspect learns of a grand jury investigation, documents or other evidence may "disappear."  Fourth, continued secrecy, even after the conclusion of the grand jury term, protects the accused because prosecutors can conduct investigations while ensuring that the reputation of the accused remains intact.  Fifth, new grand jury proceedings against a suspect can be instigated years later based on new evidence.   These final two examples, Brooks claims, show the importance of secrecy long after the investigation is completed.

Because the grand jury proceeding against Mike Hubbard has concluded and because Hubbard's criminal matter has recently come to an end, only two of the justifications listed within the statute and offered by Brooks directly bear on the case at bar: protecting the reputation of those persons falsely accused of criminal acts and safeguarding the ability of prosecutors to later bring new charges against a suspect.

First, as to protecting the reputation of the accused, although Hubbard was indicted and convicted on multiple counts, the public does not know whether or not the grand jury considered evidence of other alleged crimes for which an indictment did not issue.  Should Henry be permitted to discuss what transpired within the grand jury proceeding, he could potentially disclose evidence or accusations which are not now publicly known, further jeopardizing Hubbard's reputation as well as the reputations of others who were discussed during Henry's testimony.  With regard to this specific interest, there is no indication that Mike Hubbard wants or has asked Henry to publicly speak about what transpired within the grand jury proceeding. Alabama's interest in protecting the reputation of those accused of criminal acts thus remains sufficiently compelling to protect the secrecy of the proceedings at issue in this case.

Second, should Henry reveal evidence of other alleged crimes or even generally discuss what transpired within the grand jury room, his disclosures could impede the prosecutor's ability to instigate new proceedings against an accused. This interest is equally compelling, given that the proper functioning of the grand jury system depends on the secrecy of those proceedings.  *See Bell*, 969 F. 3d at 892.

While the public interests that the Attorney General claims are served by the Act may be limited under the particular facts in the instant case, the secrecy interests

behind the Act nevertheless do exist and are real, especially when viewed through the broader lens of the very high profile prosecution of Mike Hubbard.[11]

2. Henry's First Amendment Assertions

Furthermore, and dispositive here, unlike most other First Amendment cases where content-based regulations are challenged, the Supreme Court has held that piercing grand jury secrecy requires the proposed speaker's justifications to also be weighty; that is, the burden is not solely on the state to show a "compelling" interest. *See Douglas Oil*, 441 U.S. at 222-223. The grand jury's "indispensable secrecy . . . must not be broken except where there is a compelling necessity. There are instances when that need will outweigh the countervailing policy. But they must be shown with particularity." *United States v. Procter & Gamble Co*., 356 U.S. 677, 682 (1958) (citation and quotations omitted). This court "must thus balance respondent's asserted First Amendment rights against [the state's] interests in preserving the confidentiality of its grand jury proceedings." *Butterworth*, 494 U.S. at 630–31 (citing *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 838 (1978) (balancing the state's interest in preserving confidentiality of judicial review proceedings

---

[11] Indeed, when grand jury proceedings are challenged in a public forum, delicate matters can become complicated and distorted. For example, the release of materials from the grand jury inquiries into the police shootings of Michael Brown and Breonna Taylor sparked a rancorous public debate regarding what should or should not have resulted from those proceedings. Without commenting on what transpired in those particular cases, the court is cognizant that sensitive matters of public import require sober and deliberate resolution in the judiciary rather than in the court of public opinion.

against the rights of newspaper reporting on such proceedings); *Branzburg v. Hayes*, 408 U.S. 665, 690–91 (1972) (balancing state interest in effective grand jury proceedings against burden on reporters' news gathering from requiring disclosure of sources)).

Here, Henry's offered interest—ostensibly, telling the public about prosecutorial misconduct he witnessed in the grand jury room—especially as it relates to matters that he only learned by virtue of being present in the room and having participated in the proceeding, would eliminate the secrecy of the Lee County grand jury's proceedings for the rather weak purpose of essentially politicizing the grand jury process that indicted Mike Hubbard. After all, Henry filed this lawsuit while the Hubbard case was ongoing, perhaps in a roundabout attempt to publicly challenge the accusations of wrongdoing against Hubbard which ultimately resulted in Hubbard's criminal conviction.

Harkening back to the "public pressure" cases of the recent past, the court considers what would happen if a grand jury witness were to speak about a grand jury investigation of an innocent man who is not yet indicted. Outside pressure might warp the very purpose of the grand jury: to stand as a barrier on behalf of every citizen between the state's prosecution and the not-yet indicted citizen. "To be sure, in a case where the name of the accused and the facts are widely known, this concern is of less importance, (b)ut the fact that much of the evidence is public does not

lessen [the state's] compelling interest in ensuring [grand jury participants] do not use the information they gathered as part of the grand jury process to impugn the innocence of the accused with charges they could not agree to collectively." *Bell*, 969 F.3d at 893 (citing *Douglas Oil*, 441 U.S. at 218 n.8 (noting that petitioners were entitled to the "protection" of grand jury secrecy even though they had already been indicted and had pleaded nolo contendere)).  "Only the grand jury as a whole is in a position to have competently considered . . . the relevant evidence." *Bell*, 969 F.3d at 893.  "The interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities." *Douglas Oil*, 441 U.S. at 222.

3.  Least Restrictive Means

Simply put, there is no more limited means by which Alabama can advance its interest in preserving the functioning of the grand jury system other than mandating that its proceedings remain secret, for if a grand jury witness is to be allowed to speak about his "experiences," or the quality of the evidence discussed, or the name of the accused, then not only will jurors "hesitate to discuss matters candidly or to vote their conscience out of fear of future publicity," but the ability of the state to prosecute alleged criminals would be severely harmed as well. *See Bell*, 969 F.3d at 894 (citing *Butterworth*, 494 U.S. at 636-37 (Scalia, J., concurring)); *see also Douglas Oil Co*., 441 U.S. at 218-19 ("There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to

vote against indictment.").  The court "must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries." *Douglas Oil*, 441 U.S. at 222.

The court is mindful that there is a bona fide interest in ferreting out prosecutorial misconduct, including misconduct which takes place within a grand jury proceeding.  But there is already an outlet for addressing that interest: voicing concerns to the court overseeing the grand jury itself.  And if a criminal indictment results from the grand jury's proceedings, concerns about a rogue prosecutor could then be directed to the judge overseeing the criminal trial of the accused.  Indeed, that is precisely what occurred in Mike Hubbard's criminal proceeding. (*See* Doc. 109-5.)

## IV. CONCLUSION

In sum, drawing the line at what Henry knew prior to setting foot in the grand jury room, the First Amendment protects Henry's right to publicly speak about his own prior knowledge, but it does not protect his desire to speak about what he learned only as a result of his participation in the grand jury proceeding.  There is no more limited means by which Alabama can advance its compelling state interest in preserving the functioning of the grand jury system.  If Henry were to speak on the quality of the evidence or the prosecutor, or what transpired inside the proceeding, he would necessarily undermine the functioning of the grand jury and, as reflected

in this case, politicize those proceedings. As the *Bell* court noted, "[w]itnesses in future cases may be less candid. The unindicted may face unending questions about culpability as juror after juror comes forward with their own view of the evidence, feeling pressured to respond either to challenge or defend Doe's views, lest their collective decision be mischaracterized. And in future cases, jurors might hesitate to discuss matters candidly or to vote their conscience out of fear of future publicity." *Bell*, 969 F.3d at 894.   The imposition of secrecy is narrowly tailored to serve Alabama's compelling interest in the confidentiality of its grand jury proceedings.

For the foregoing reasons, the court finds that provisions of the Alabama Grand Jury Secrecy Act, specifically Ala. Code § 12-16-216, are unconstitutionally overbroad to the extent these provisions preclude a grand jury witness from disclosing his prior knowledge in a public forum. The Act otherwise meets constitutional muster. Accordingly, it is ORDERED as follows:

1. The Plaintiff's Motion for Summary Judgment (Doc. 111) is GRANTED in part as to the Plaintiff's overbreadth claim. The motion is DENIED as to all other claims.

2. The Defendant's Motion for Summary Judgment (Doc. 103) is DENIED as to the Plaintiff's overbreadth claim. The motion is GRANTED as to all other claims in the Complaint.

3.  The Plaintiff's request for a permanent injunction as to the enforcement of the Act against Henry is DENIED.

4.  The Plaintiff's request for an order releasing the transcripts and audio recordings of Henry's 2014 testimony before a Lee County grand jury is DENIED.

5.  The Plaintiff's request for a permanent injunction as to the warnings given to grand jury witnesses is DENIED.

DONE and ORDERED this 31st day of March, 2021.


          /s/ R. Austin Huffaker Jr.
      R. AUSTIN HUFFAKER, JR.
      UNITED STATES DISTRICT JUDGE